Dissenting opinion filed by Chief District Judge STARK.
REYNA, Circuit Judge.
Innovative Wireless Solutions (“IWS”) appeals the final judgment of non-infringement of the district court in the Western District of Texas. IWS challenges the district court’s conclusion that the asserted patent claims are limited to wired rather than wireless communications. Because we find no error in the district court’s construction, we affirm.
BACKGROUND
IWS owns U.S. Patent Nos. 5,912,895; 6,327,264; and 6,587,473 (“Terry patents”). The patents are a line of continuations beginning with the ’895 patenf. All share the ’895 specification.
In April 2013, IWS commenced a litigation campaign against several dozen hotels and coffee shops doing business in the Eastern District of Texas. IWS alleged that each defendant infringed the Terry patents by providing WiFi Internet access to its customers using off-the-shelf WiFi equipment sold by Ruckus and Cisco (“Ruckus”). Ruckus responded by filing for declaratory judgment of invalidity and non-infringement-in the Western District of Texas. On the issue of non-infringement, Ruckus argued that its wireless equipment does not infringe the Terry patents because the Terry patents are limited to *1001 wired rather than wireless communications.
The Terry patents concern techniques for providing access to a local area network (LAN) from a relatively distant computer. '895 patent col. 3 11. 13-31. A LAN is a group of computers connected by a shared short-range transmission medium and configured to communicate using a given LAN protocol. Id. col. 1 11. 13-31. When two computers on the LAN transmit onto the medium concurrently, they create interference known as a “collision,” and the concurrent communications may be lost. Id. col. 3 11. 47-53. To deal with these collisions, a LAN protocol may define a contention scheme. Id. col. 8 11. 4-25. For instance, in a “collision detection” scheme, a transmitting computer that detects a collision waits for a given period before reattempting the transmission. Id. col. 7 11. 66-67, col. 8 11. 1-18. “Carrier Sense Multiple Access with Collision Detection” (CSMA/ CD) is an IEEE standard LAN protocol that uses collision detection. Id.; id. col. 1 11. 25-33.
The further apart two devices are on a LAN, the longer it takes transmissions between those devices to traverse the transmission medium. Id. col. 1 11. 61-67, col. 2 11. 1-18. When the devices are sufficiently far apart, the long transmission delays may render collision detection ineffective. Id. col. 8 11. 26-43. Consequently, it is not practical to use LAN protocols with collision detection over long distances, such as those spanned by telephone lines. Id.
The Terry patents describe an approach by which a computer may communicate with a LAN over the long distances covered by telephone lines. The inventors propose using a collision avoidance scheme rather than a collision detection scheme. Id. col. 9 11. 32-51. Under the avoidance scheme, a “master” modem in the LAN dictates the timing of one-way communications between the master modem and a “slave” modem in the distant computer. Id. Although the patents only describe connecting the master and slave modems over physical wires, such as a telephone line, the claims recite that the two modems are connected via a “communications path.” Claim 1 of the '895 patent is representative:
1. A method of providing communications with a CSMA/CD (Carrier Sense Multiple Access with Collision Detection) network via a bidirectional communications path, comprising the steps of:
at a first end of the communications path, providing a CSMA/CD interface to the network, buffering information packets received from the network via the interface in a first buffer, supplying information packets from the first buffer to the communications path, and supplying control information to the communications path;
at a second end of the communications path, buffering information packets received via the communications path in a second buffer, receiving the control information from the communications path, buffering information packets to be supplied via the communications path to the network in a third buffer, and supplying information packets from the third buffer to the communications path in dependence upon the control information; and
at the first end of the communications path, supplying information packets received via the communications path to a fourth buffer, and supplying the information packets from the fourth buffer to the network via the interface;
*1002 wherein the control information and the dependence on the control information for supplying information packets from the third buffer to the communications path are arranged to avoid collisions on the communications path between information packets communicated from the first buffer to the second buffer and information packets communicated from the third buffer to the fourth buffer.
Id. col. 21 11. 5-37 (claim 1). The Terry patents make no mention of wireless communication.
The central dispute during claim construction was whether the recited “communications path” captures wireless communications or is limited to wired communication. The district court adopted the latter view by construing “communications path” to mean “communications path utilizing twisted-pair wiring that is too long to permit conventional 10BASE-T or similar LAN (Local Area Network) interconnections.” Cisco Sys., Inc. v. Innovative Wireless Sols., LLC, No. 1:13-CV-00492-LY, 2015 WL 128138, at *8 (W.D. Tex. Jan. 8, 2015). The district court reasoned that the specification’s “repeated reference to two-wire lines and telephone lines emphasizes that the inventor was focused on this transmission medium as the core of the new technology,” and it therefore concluded that, in view of the entire specification, “the Terry Patents are solely focused on communicating information packets long distances over wired communication paths.” Id. at *7. The district court found particularly persuasive a passage from the written description regarding the scope of alternative embodiments. That passage states that, “although as described here the line 12 is a telephone subscriber line, it can be appreciated that the same arrangement of master and slave modems operating in accordance with the new protocol can be used to communicate Ethernet frames via any twisted pair wiring which is too long to permit conventional 10BASE-T or similar LAN interconnections.” Id. The district court considered this passage evidence that the inventors contemplated different types of communication paths but chose to limit those types to “any twisted-pair wiring that is too long to permit conventional LAN interconnections.” Id. at 8.
Based on the district court’s construction, the parties stipulated jointly to a final judgment of non-infringement. IWS appeals the construction limiting the term “communications path” to wired communication.
Disoussion
Where the district court’s claim construction relies only on intrinsic evidence, the construction is a legal determination reviewed de novo. Teva Pharm. USA, Inc. v. Sandoz, Inc., — U.S. -, 135 S.Ct. 831, 841, — L.Ed.2d - (2015). Although the district court here heard a technology tutorial with expert testimony, it relied only on intrinsic evidence to construe the term “communications path.” We therefore review that construction de novo.
“[T]he words of a claim are generally given their ordinary and customary meaning,” which is “the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention.” Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)). The ordinary meaning may be determined by reviewing various sources, such as the claims themselves, the specifi *1003 cation, the prosecution history, dictionaries, and any other relevant evidence. See Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1325 (Fed. Cir. 2002). Ultimately, “[t]he only meaning that matters in claim construction is the meaning in the context of the patent.” Trs. of Columbia Univ. v. Symantec Corp., 811 F.3d 1359, 1363 (Fed. Cir. 2016). Legal error arises when a court relies on extrinsic evidence that contradicts the intrinsic record. See Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp., 790 F.3d 1329, 1338 (Fed. Cir. 2015); On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH, 386 F.3d 1133, 1138-39 (Fed. Cir. 2004).
IWS argues that the district court erred by importing the wired limitation into the claims. IWS argues it is improper to read a limitation into the claims on the basis that every disclosed embodiment includes that limitation. Finally, it argues that because several dependent claims limit the communications path to “two-wire line” or “two-wire telephone line,” the unmodified “communications path” term must encompass more, including wireless communications.
Ruckus counters the term “communications path” does not have a plain and ordinary meaning to a person having ordinary skill in the art. Ruckus also argues that the wired limitation was proper because that limitation is a “core feature” of the invention, which is a solution to a problem arising in long-distance communication over wires. It echoes the district court’s reasoning that the specification limits the scope of the invention to “any twisted pair wiring which is too long to permit conventional ... LAN interconnections.” It dismisses IWS’s claim differentiation arguments because “two-wire telephone line” is only one type of several wired lines disclosed in the specification, meaning that the term “communications path” need not cover wireless communications to be broader than “two-wire telephone line.”
IWS’s argument relies on the assumption that “communications path” has an ordinary meaning which encompasses both wired and wireless communications. But we see no intrinsic or extrinsic evidence to support IWS’s assumption that a person of ordinary skill at the time of invention would have understood the plain and ordinary meaning of “communications path” to include wireless communications. We see nothing in the intrinsic record that would have suggested to one of ordinary skill that “communications path” refers to wireless communications. To the contrary, the intrinsic record militates powerfully against that understanding. First, the title of the Terry patents indicates that they are directed to “Communicating Information Packets Via Telephone Lines.” ’895 patent col. 1 ll. 1-4 (emphasis added).[2] Second, the specification describes “[t]his invention” as one “particularly concerned” with “two wire lines such as telephone subscriber lines.” Id. col. 1 ll. 6-10. Third, every embodiment described in the specification utilizes a telephone wire, and when the specification clarifies that the full breadth of the invention is not limited to the expressed embodiments, it declares only that the patents may also reach any wired connection. Id. col. 9 ll. 45-51. Though these statements do not expressly exclude wireless communications from the meaning of “communications path,” they do not include it, and they discourage that understanding. Further, IWS did not present — nor did the district court consult— any extrinsic evidence, such as dictionar *1004 ies, trade literature, expert testimony, or any other evidence showing that “communications path” was a term of art or otherwise understood to include wireless communications at the time of invention.
Considering the claims as a whole provides no additional clue that “communications path” includes wireless communications. Though several dependent claims limit the communications path to a “two-wire telephone subscriber line” ('895 patent, claims 13, 21, 23, 25) or a “two-wire line” ('473 patent, claims 6, 21, 27, 28), we agree with Ruckus that these dependent claims could merely exclude other types of wired communications paths disclosed in the specification, such as coaxial cable. See id. at col. 3 11. 13-23. The doctrine of claim differentiation&emdash;which encourages us to construe independent claims more broadly than their dependent claims&emdash;therefore does not necessarily suggest that the “communications path” recited in the independent claim encompasses wireless communications. We also have no evidence that the underlying purpose and disclosed solution of the Terry patents might evoke wireless communication in the mind of a skilled artisan. IWS presents no evidence that the inability to execute collision detection protocols over long distances was a problem in wireless communication or that collision detection was even used in that context. We therefore have no reason to believe that the purpose of the patents would have implicated wireless communications within the meaning of “communications path.”
The canons of claim construction provide additional reason to limit the scope of the claims to wired communication. If, after applying all other available tools of claim construction, a claim is ambiguous, it should be construed to preserve its validity. Phillips, 415 F.3d at 1327. Because the specification makes no mention of wireless communications, construing the instant claims to encompass that subject matter would likely render the claims invalid for lack of written description. See Gentry Gallery, Inc. v. Berkline Corp., 134 F.3d 1473, 1480 (Fed. Cir. 1998) (holding that a claim “may be no broader than the supporting disclosure”). The canon favoring constructions that preserve claim validity therefore counsels against construing “communications path” to include wireless communications.
We conclude that no intrinsic or extrinsic evidence suggests that “communications path” encompasses wireless communications. Accordingly, we affirm the district court’s claim constructions and final judgment of non-infringement based thereon.
AFFIRMED
Costs
No costs.

. We have used the title of a patent to aid in claim construction. See, e.g., Exxon Chem. Patents, Inc. v. Lubrizol Corp., 64 F.3d 1553, 1557 (Fed. Cir. 1995); Titanium Metals Corp. of Am. v. Banner, 778 F.2d 775, 780 (Fed. Cir. 1985).