NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ONE-E-WAY, INC.,**
*Plaintiff-Appellant*

**v.**

**APPLE INC.,**
*Defendant-Appellee*

---

2022-2020

---

Appeal from the United States District Court for the Central District of California in No. 2:20-cv-06339-JAK-GJS, Judge John A. Kronstadt.

---

Decided: August 14, 2023

---

DOUGLAS GLEN MUEHLHAUSER, Knobbe, Martens, Olson & Bear, LLP, Irvine, CA, argued for plaintiff-appellant. Also represented by PAYSON J. LEMEILLEUR.

HEIDI LYN KEEFE, Cooley LLP, Palo Alto, CA, argued for defendant-appellee. Also represented by DENA CHEN, BENJAMIN S. LIN, LOWELL D. MEAD.

---

Before MOORE, *Chief Judge*, LOURIE and STOLL, *Circuit Judges*.

MOORE, *Chief Judge*.

One-E-Way, Inc. (One-E-Way) appeals from the U.S. District Court for the Central District of California's grant of summary judgment that Apple Inc.'s (Apple) accused products do not infringe the asserted claims of One-E-Way's U.S. Patent Nos. 10,129,627 and 10,468,047. We affirm.

## BACKGROUND

One-E-Way's asserted patents relate to "a wireless digital audio system for coded digital transmission of an audio signal from any audio player with an analog headphone jack to a receiver headphone located away from the audio player." '627 patent at 1:66–2:3.[1] The written description explains the system "provides private listening without interference from other users or wireless devices and without the use of conventional cable connections." *Id.* at 2:10–13. The system includes, among other things, a battery-powered transmitter connected to an audio source and a battery-powered receiver connected to headphone speakers. *Id.* at 2:40–64, Fig. 1. The transmitter contains a code generator which may generate a unique user code "specifically associated with one wireless digital audio system user." *Id.* at 2:64–3:1. The unique user code is used to pair the transmitter and receiver such that each headphone user "may be able to listen (privately) to high fidelity audio music . . . without interference from any other receiver headphone user." *Id.* at 3:42–46.

Claim 1 of the '627 patent is representative and recites:

---

[1]    Because the '627 and '047 patents share the same specification, we cite only to the '627 patent.

A wireless digital audio spread spectrum receiver, capable of mobile operation, configured to receive a unique user code and a high quality audio signal representation with a frequency range of 20 Hz to 20 kHz from a digital audio spread spectrum transmitter, said audio signal representation representative of audio from a portable audio source, said digital audio spread spectrum receiver operative to communicate wirelessly with said digital audio spread spectrum transmitter, said digital audio spread spectrum receiver comprising:

a direct conversion module configured to receive wireless spread spectrum signal transmissions representative of the unique user code and the high quality audio signal representation, wherein the received transmissions are encoded to reduce intersymbol interference, wherein the wireless digital audio spread spectrum receiver is capable of processing the high quality audio signal having a frequency range of 20 Hz to 20 kHz;

a digital-to-analog converter (DAC) configured to generate an audio output from said receiver audio signal representation; and

a speaker configured to reproduce said generated audio output, wherein said reproduction does not include audible audio content originating from any transmitted audio signals in the wireless digital audio spread spectrum transmitter spectrum that do not originate from said digital audio spread spectrum transmitter;

wherein the wireless digital audio spread spectrum receiver is configured to use independent code division multiple access

communication and to use the received *unique user code* to communicate with only said wireless digital audio spread spectrum transmitter for the duration of a wireless connection; and

wherein the wireless digital audio spread spectrum receiver is further configured to:

demodulate a received modulated transmission, and

generate a demodulated signal based on the received modulated transmission by performing at least one of a plurality of demodulations, wherein the plurality of demodulations includes a differential phase shift keying (DPSK) demodulation and also includes a non-DPSK demodulation.

'627 patent at claim 1 (emphases added).

After One-E-Way sued Apple for infringement, the parties agreed the term "unique user code" means "fixed code (bit sequence) specifically associated with one user of a device(s)." *One-E-Way, Inc. v. Apple Inc.* (*Claim Construction Order*), 2022 WL 2189529, at *6 (C.D. Cal. Mar. 9, 2022). The district court accepted the construction and issued an order stating the construction was binding on the parties. *Id.* Apple moved for summary judgment of noninfringement contending its accused Bluetooth-compliant devices do not include a "unique user code" under the agreed-upon construction because its devices contain codes associated with *devices*, not *users*. One-E-Way responded that the "unique user code" is associated with a user through the operation of the device and the accused Bluetooth-compliant devices therefore infringe the asserted claims. *See generally* J.A. 1327–54. The parties disputed the

interpretation and application of the stipulated construction. The district court held the plain meaning of the stipulated construction of "unique user code" "means that the code is 'associated with *one user* of a device(s),' and not the device itself." *One-E-Way, Inc. v. Apple Inc.* (*Summary Judgment Order*), 2022 WL 2564002, at \*7 (C.D. Cal. June 15, 2022). The court granted summary judgment because the accused Bluetooth-complaint devices are "user-agnostic," which cannot meet the "unique user code" limitation. *Id.* at \*9. One-E-Way appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review the district court's grant of summary judgment according to the law of the regional circuit. *Neville v. Found. Constructors, Inc.*, 972 F.3d 1350, 1355 (Fed. Cir. 2020). The Ninth Circuit reviews summary judgment de novo. *Id.* (citing *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 995 (9th Cir. 2017)). "[T]he ultimate question of the proper construction of the patent [is] a question of law." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 325 (2015). "[W]hen the district court reviews only evidence intrinsic to the patent (the patent claims and specifications, along with the patent's prosecution history), the judge's determination will amount solely to a determination of law, and the Court of Appeals will review that construction de novo." *Id.* at 331.

The parties dispute whether the plain and ordinary meaning of the agreed-upon construction for "unique user code" means the code is associated with a user or device. One-E-Way argues the district court narrowly interpreted the construction to require additional, unclaimed features. Apple argues the district court correctly interpreted the construction under the plain meaning of the term. We agree with the district court that, under the plain meaning of the phrase "associated with one user of a device(s)," the

unique user code is associated with one user of a device and not the device itself.

Claims are generally given their "ordinary and customary meaning," which is the meaning the term would have to a person of ordinary skill in the art when read in the context of the claim, specification, and prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc) (citations omitted). Here, the specification supports the conclusion that the plain meaning of "one user of a device" refers to a code associated with the user of a device rather than the device itself. The patents distinguish between users and devices when describing the purpose of the invention. *See* '627 patent at 2:10–13 ("The wireless digital audio music system provides private listening without interference from other users or wireless devices. . . ."). Additionally, the written description consistently associates the "unique user code" with a "user." For example, when describing aspects of the invention, the specification states "[t]he unique user code generated is specifically associated with *one wireless digital audio system user*, and it is the only code recognized by the battery powered headphone receiver 50 operated by *a particular user*." *Id.* at 2:66–3:3 (emphases added). Other portions of the specification also describe the user code as associated with a particular user. *See, e.g., id.* at 3:23–26 ("The receiver code generator 60 may contain the same unique wireless transmission of a signal code word that was transmitted by audio transmitter 20 specific to a particular user."). The patents' consistent reference to "user" and "device" as distinct entities and association of the unique user code with "user" supports the district court's conclusion that "one user of a device" does not mean the device itself.

The prosecution history further supports this understanding of "one user of a device." For example, in the prosecution of U.S. Patent Application No. 10/648,012—a parent application with the same written description as the

asserted patents—the applicant overcame prior art by distinguishing between user codes and device codes. J.A. 928, 941–42. Specifically, the applicant contended U.S. Patent No. 5,491,839 (Schotz) uses "codes [that] are assigned to specific devices for a single household—not individual users." J.A. 942. Because the codes were assigned to devices, the applicant explained "the Schotz code may be properly deemed a 'device code' as opposed to a 'user code' as in the present invention." *Id.* The applicant's own description of the term "user code" supports the conclusion that a skilled artisan would understand the ordinary meaning of the term, in the context of the intrinsic record, does not mean device code. *Phillips*, 415 F.3d at 1317 ("[A] court should also consider the patent's prosecution history. . . ." (citations omitted)). Because the prosecution history supports the district court's understanding, we need not decide whether such statements rise to the level of prosecution history disclaimer. *See Shire Dev., LLC v. Watson Pharms., Inc.*, 787 F.3d 1359, 1366 (Fed. Cir. 2015).

We conclude "unique user code" is associated with one user of a device, and not the device itself. Because the parties agreed there is no genuine dispute of material fact that Apple's accused Bluetooth-complaint devices do not infringe under such construction, we therefore affirm the district court's grant of summary judgment of noninfringement.

## CONCLUSION

We have considered One-E-Way's remaining arguments and find them unpersuasive. For the reasons given, we affirm the district court's grant of summary judgment of noninfringement.

## **AFFIRMED**

### COSTS

Costs awarded to Apple.