NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BARRDAY, INC., BARRDAY CORP.,**
*Plaintiffs-Appellants*

**v.**

**LINCOLN FABRICS INC.,**
*Defendant-Appellee*

---

2022-1903

---

Appeal from the United States District Court for the Western District of New York in No. 1:15-cv-00165-LJV-MJR, Judge Lawrence J. Vilardo.

---

Decided: November 16, 2023

---

MICHAEL J. BERCHOU, Harter Secrest & Emery, Buffalo, NY, argued for plaintiffs-appellants.

ROBERT J. FLUSKEY, JR., Hodgson Russ LLP, Buffalo, NY, argued for defendant-appellee. Also represented by CHARLES RAUCH.

---

Before HUGHES, CUNNINGHAM, and STARK, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* CUNNINGHAM.

Dissenting opinion filed by *Circuit Judge* STARK.

CUNNINGHAM, *Circuit Judge.*

Barrday, Inc. and Barrday Corp. (collectively, "Barrday") appeal from the stipulated final judgment of noninfringement of the United States District Court for the Western District of New York, which was entered in favor of Lincoln Fabrics Inc. ("Lincoln") as to two of Barrday's patents: U.S. Patent Nos. 8,573,261 and 9,127,379 (collectively, the "Asserted Patents"). *See* J.A. 1–4. The stipulated final judgment of noninfringement was predicated on the district court's construction of the securing yarns claim term. *See Barrday, Inc. v. Lincoln Fabrics Inc.*, No. 15-CV-165-LJV-JWF, 2021 WL 3076869 (W.D.N.Y. July 21, 2021) ("*Claim Construction Order*"); *Barrday, Inc. v. Lincoln Fabrics Inc.*, No. 15-CV-165-LJV-JWF, 2021 WL 8263498 (W.D.N.Y. Oct. 28, 2021) ("*Clarification Order*"). Because the district court did not err in its construction of the securing yarns claim term, we *affirm* the district court's judgment of noninfringement of the Asserted Patents.

## I.    BACKGROUND

### A.    The Asserted Patents

The Asserted Patents, both entitled "Woven Multi-Layer Fabrics and Methods of Fabricating Same," cover certain woven, multi-layer fabrics used in ballistic applications. *See, e.g.*, '261 patent col. 10 ll. 10–25; *see also id.* col. 1 ll. 15–17, col. 2 ll. 12–13.[1] The fabrics comprise an upper (or first) layer and a lower (or second) layer, where each layer is made up of "warp" and "weft" yarns. *Id.* col. 2 ll. 14–31. "Warp" and "weft" refer to yarn direction, with

---

[1]    Because the Asserted Patents are related and share a specification, we generally cite to the specification of the '261 patent.

warp yarns "run[ning] lengthwise along the fabric" and weft yarns "run[ning] across the length of the fabric" such that they "are interwoven with and generally perpendicular to the warp yarns." *Id.* col. 1 ll. 23–26; *see also id.* col. 5 ll. 55–58. The upper and lower layers are "secured together" by "securing yarns." *Id.* col. 2 ll. 42–46.

Figure 1 shows an embodiment with "an overhead perspective view":



FIG. 1

*Id.* fig. 1, col. 1 ll. 55–56. "[T]he woven fabric **10** is formed by interweaving the securing yarns **22** with" the upper warp yarns **12**, lower warp yarns **15**, upper weft yarns **14**, and lower weft yarns **17** "as the fabric **10** is formed." *Id.* col. 2 ll. 48–50; *see also id.* col. 2 ll. 14–31.

The Asserted Patents each have only one independent claim, and both of these independent asserted claims contain the disputed "securing yarns" claim term. *See id.* col. 10 ll. 10–25; '379 patent col. 10 ll. 9–23. Independent claim 1 of the '379 patent recites:

1. A multi-layer ballistic woven fabric, comprising:

a. an upper woven layer having upper warp yarns and upper weft yarns that are interwoven together;

b. a lower woven layer having lower warp yarns and lower weft yarns that are interwoven together;

c. *a plurality of securing yarns, each securing yarn interwoven with at least some of the upper yarns and some of the lower yarns so as to secure the upper and lower woven layers together*;

d. wherein the multi-layer ballistic woven fabric is formed by interweaving the securing yarns with the warp yarns and weft yarns as the upper woven layer and lower woven layer are made: and further wherein at least some of the upper and lower yarns are offset from each other so as to overlap by more than 10%.

'379 patent col. 10 ll. 9–23 (emphasis added to relevant limitation).  Independent claim 1 of the '261 patent contains the same relevant limitation.  *See* '261 patent col. 10 ll. 15–18.

Dependent claims 10 through 14 of the '379 patent, recited below, also contain limitations relevant to the claim construction issue on appeal:

10. The multi-layer ballistic woven fabric of claim **1**, *wherein the securing yarns include one or more of the upper warp yarns, the lower warp yarns, the upper weft yarns and the lower weft yarns.*

11. The multi-layer ballistic woven fabric of claim **1**, *wherein the securing yarns include one or more of the upper warp yarns and the upper weft yarns.*

12. The multi-layer ballistic woven fabric of claim **1**, *wherein the securing yarns include one or more of the lower warp yarns and the lower weft yarns.*

13. The multi-layer ballistic woven fabric of claim **1**, *wherein the securing yarns include one or more of the upper warp yarns and the lower warp yarns.*

14. The multi-layer ballistic woven fabric of claim **1**, *wherein the securing yarns include one or more of the upper weft yarns and the lower weft yarns.*

'379 patent col. 10 ll. 52–67 (emphases added to relevant limitations).

### B.   Procedural History

On February 24, 2015, Barrday sued Lincoln, alleging that Lincoln's fabrics infringed one or more claims of the '261 patent. *See* J.A. 54–58. In response, Lincoln sent a letter to Barrday on March 10, 2015, explaining that Barrday lacked a reasonable basis for suit because the accused Lincoln fabrics interweave the upper (or first) and lower (or second) layers without using securing yarns. *See* J.A. 559–60. A few weeks later, on April 2, 2015, Barrday amended the claims of the pending patent application that issued as the '379 patent, including by adding the claims that issued as dependent claims 10 through 14. *See* J.A. 567; *see also* J.A. 564, 572, 574. After this amendment, the examiner issued a notice of allowance; the '379 patent issued; and Barrday filed an amended complaint to add infringement allegations for the '379 patent. *See* J.A. 82, 86–87.[2]

In July 2021, the district court issued its claim construction order, construing securing yarns to mean "yarns,

---

[2]    We take judicial notice of the relevant portions of the publicly-accessible '379 patent file history not included in the appellate record. *See, e.g., Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 954 n.27 (Fed. Cir. 1993) (citations omitted); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 514 n.3 (Fed. Cir. 1990).

other than yarns from the upper and lower woven layers, that secure the upper and lower woven layers together." *Claim Construction Order* at \*13–14. In doing so, the district court adopted in substantial part Lincoln's proposed construction. *See id.* at \*6, \*14; J.A. 542. The district court rejected Barrday's argument that no construction was necessary, *Claim Construction Order* at \*6 n.4, and rejected Barrday's alternative proposed construction of "yarns for securing or holding upper and lower woven layers together." J.A. 200; *Claim Construction Order* at \*6. Subsequently, Barrday filed a motion for clarification of the claim construction order, which the district court denied. *See* J.A. 768–76; *Clarification Order* at \*1–2.

Following the district court's orders, the parties stipulated to noninfringement of the asserted claims of the Asserted Patents based on the district court's securing yarns construction, and the district court entered final judgment in accordance with the stipulation on May 12, 2022. *See* J.A. 1–4.

## II. DISCUSSION

Barrday presents only one issue on appeal: whether the district court erred in construing securing yarns as "yarns, other than yarns from the upper and lower woven layers, that secure the upper and lower woven layers together." *See Claim Construction Order* at \*13–14; Appellants' Br. 18–21. We agree with the district court's construction.

### A. Standard of Review

"Where the district court's claim construction relies only on intrinsic evidence," as is the case here, "the construction is a legal determination reviewed de novo." *Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1135–36 (Fed. Cir. 2016) (citing *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331–33 (2015)); *see also Allergan Sales, LLC v. Sandoz, Inc.*, 935 F.3d 1370, 1373 (Fed. Cir. 2019)

(citation omitted). "Claim terms are generally given their ordinary and customary meaning, which is the meaning they would have to a person of ordinary skill in the art at the time of the invention." *Poly-Am.*, 839 F.3d at 1136 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc)). The skilled artisan "is deemed to read a claim term not only in the context of the particular claim in which it appears, but in the context of the entire patent" and terms are interpreted in view of "the intrinsic evidence of record, including the written description, the drawings, and the prosecution history." *Allergan*, 935 F.3d at 1373 (cleaned up).

## B. Claim Construction

The crux of the parties' dispute is whether the securing yarns claim term can include yarns from the upper and lower woven layers when such yarns are serving the securing function. *See* Appellants' Br. 18; Appellee's Br. 13. Barrday first argues that the district court should not have construed the securing yarns claim term because no construction is required. *See* Appellants' Br. 18. Alternatively, Barrday contends that the intrinsic evidence does not support the district court's construction and rather supports its proposed construction: "yarns for securing or holding upper and lower woven layers together." *Id.* at 25; *see also id.* at 21, 41–42. Under Barrday's proposed construction and contrary to the district court's construction, securing yarns include, rather than exclude, yarns from the upper and lower layers. *See id.* at 25, 38; Appellants' Reply Br. 5. We address each argument in turn.

Barrday first contends that the securing yarns claim term requires no construction "[g]iven the language of the claims." Appellants' Br. 25; *see also id.* at 23–24. We disagree. "When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1318 (Fed. Cir. 2016)

(quoting *O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.,* 521 F.3d 1351, 1362 (Fed. Cir. 2008)).  Though the parties agree that "securing yarns" secure the upper and lower woven layers together, they dispute whether the term applies to warp and weft yarns from the upper and lower layers when such yarns are serving the securing function.  *See* Appellants' Br. 18; Appellee's Br. 13, 17–18.  In other words, the dispute is whether the securing yarns are separate from the yarns of the upper and lower layers.  *See* Appellants' Br. 18; Appellee's Br. 13, 17–18.  Because the parties raise "a fundamental dispute regarding the scope" of securing yarns, it was proper for the district court—and is now proper for this court—to resolve the dispute.  *See Eon*, 815 F.3d at 1318 (quoting *O2 Micro*, 521 F.3d at 1362); *Claim Construction Order* at *5–14 & n.4.

Moving to Barrday's challenge to the district court's construction and starting with the claim language, asserted independent claims 1 of the Asserted Patents contain the identical relevant limitation:  "a plurality of securing yarns, each securing yarn interwoven with at least some of the upper yarns and some of the lower yarns so as to secure the upper and lower woven layers together." '261 patent col. 10 ll. 15–18; '379 patent col. 10 ll. 14–17. Barrday concedes that these claims refer to the upper yarns, lower yarns, and securing yarns as "separate structural limitations."  Oral Arg. at 5:42–53, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=22-1903_0504202 3.mp3; *see also id.* at 4:35–43 (Barrday admitting same). Where a claim lists elements separately, as done here, there is "a presumption that those components are distinct."  *Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369, 1382 (Fed. Cir. 2022) (citation omitted); *see also Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008) ("Our precedent instructs that different claim terms are presumed to have different meanings.") (citations omitted). Moreover, it would be "nonsensical" to interpret yarns from

the upper and lower layers as the same structure as the securing yarns when these distinct terms are used and these yarns are "interwoven with" one another as claimed. *See Neville v. Found. Constructors, Inc.*, 972 F.3d 1350, 1357 (Fed. Cir. 2020) (citation omitted) (finding it would be "nonsensical" to construe an "end plate" as an indistinguishable part of a "protrusion" because the latter was "extending outwardly" from the former as claimed). Therefore, the language of the independent claims supports the district court's securing yarns construction excluding yarns from the upper and lower layers.

The specification, which is often "the single best guide to the meaning of a disputed term," similarly supports the district court's construction. *See Phillips*, 415 F.3d at 1315 (citation omitted). The specification exclusively refers to securing yarns as structures that are separate and distinct from warp and weft yarns of the upper and lower layers. *See, e.g.*, '261 patent col. 8 ll. 17–19 ("The upper and lower woven layers **411**, **413** are secured together using one or more securing yarns **422**[.]"); *id.* col. 5 ll. 49–52 ("The first [*i.e.*, upper] and second [*i.e.*, lower] layers **111**, **113** are secured together by securing yarns **122** that are interwoven with the first and second warp and weft yarns as the fabric **110** is woven together."); *id.* col. 2 ll. 66–col. 3 l. 2 ("[T]he securing yarns **22** may be generally parallel to or aligned with the warp yarns **12**, **15** and generally perpendicular to the weft yarns **14**, **17**."). Furthermore, in at least some embodiments, the specification repeatedly describes the securing yarns as having different characteristics from the warp and weft yarns of the upper and lower layers. *See, e.g., id.* col. 4 ll. 23–26 ("[T]he securing yarns **22** are generally of significantly smaller denier than the warp yarns **12**, **15** and/or weft yarns **14**, **17** and may have significantly lower tenacities and tensile moduli."); *id.* col. 4 ll. 42–44 ("[T]he securing yarns **22** may be generally of a much smaller size than the warp yarns **12**, **15** and weft yarns **14**, **17**.").

"Where, as here, a patent repeatedly and consistently characterizes a claim term in a particular way, it is proper to construe the claim term in accordance with that characterization." *Wis. Alumni Rsch. Found. v. Apple Inc.*, 905 F.3d 1341, 1351 (Fed. Cir. 2018) (internal quotation marks and citation omitted). The specification's "clear, repeated, and consistent statements" treating the securing yarns as "different and distinct" from the warp and weft yarns of the upper and lower layers and statements describing how the characteristics of the yarns are different supports a securing yarns construction that excludes yarns from the upper and lower layers. *See SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1203–04 (Fed. Cir. 2013); *see also Wis. Alumni*, 905 F.3d at 1351–52; *In re Abbott Diabetes Care Inc.*, 696 F.3d 1142, 1150 (Fed. Cir. 2012).

And even more notably, the specification expressly criticizes the interweaving practice where securing yarns include yarns of the upper and lower layers—*i.e.*, the construction proposed by Barrday and endorsed by the dissent. This excerpt states:

> Generally, *the yarns of one layer are not interwoven with the yarns of another layer* because such interweaving tends to increase the degree of crimp for the yarn in relation to [the] rest of the yarns in the fabric, which can create ballistic weak points. In particular, *the first or upper yarns 12, 14 are not interwoven with the second or lower yarns 15, 17, and vice versa. Instead, as shown, the first or upper layer 11 and second or lower layer 13 are secured together by one or more securing yarns 22*. The securing yarns **22** are interwoven with at least some of the upper yarns **12**, **14** and some of the lower yarns **15**, **17** so as to secure the upper and lower layers **11**, **13** together.

'261 patent col. 2 ll. 36–46 (emphases added). As Barrday concedes, this excerpt describes the advantages of

interweaving with securing yarns that are distinct from yarns of the upper and lower layers. *See* Appellants' Reply Br. 9.

Although Barrday argues that this excerpt does not "amount to an express disavowal of claim scope," Appellants' Br. 34, "[o]ur case law does not require explicit redefinition or disavowal." *Trs. of Columbia Univ. in City of N.Y. v. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016) (citation omitted). "When the scope of the invention is clearly stated in the specification, and is described as the advantage and distinction of the invention," as is the case here, "it is not necessary to disavow explicitly a different scope." *Id.* at 1364 (quoting *On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1340 (Fed. Cir. 2006)). The "repeated description" of securing yarns as separate and distinct structures from yarns of the upper and lower layers, the "extolling of the virtues" of separate securing yarns, and the "criticism" of the interweaving practice where securing yarns include yarns of the upper and lower layers "clearly point to the conclusion" that the construction of securing yarns excludes yarns from the upper and lower layers. *See UltimatePointer, L.L.C. v. Nintendo Co.*, 816 F.3d 816, 823 (Fed. Cir. 2016).

The Asserted Patents' figures further support the district court's securing yarns construction that excludes yarns from the upper and lower layers. Each of the nine figures depicts securing yarns as separate from yarns of the upper and lower layers. *See* '261 patent figs. 1–9, col. 1 l. 51–col. 2 l. 8. Indeed, Barrday and the dissent concede that none of the nine figures "show[s] an embodiment in which the securing yarns include upper or lower warp or weft yarns." Appellants' Reply Br. 11; *see also* Oral Arg. at 2:38–47 (Barrday admitting that "[t]here's no figure that shows the use of the warp and weft yarns . . . as securing yarns."); Dissent at 10 ("I recognize that all of the figures in the specification only depict embodiments in which the securing yarns are separate from the warp and weft yarns."). Where

each figure in the asserted patent aligns with a particular construction, as is the case here, such figures offer further support for that particular construction. *See, e.g., Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1317 (Fed. Cir. 2015) (affirming district court's construction because, in part, the "construction [wa]s supported by . . . *every* figure" and "patent drawings are highly relevant in construing the limitations of the claims") (emphasis in original) (cleaned up); *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1375 (Fed. Cir. 2009); *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1321 (Fed. Cir. 2016); *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1063 (Fed. Cir. 2016). Barrday conceded as much at oral argument, agreeing that "all of the figures in the [Asserted] Patents support the district court's claim construction." Oral Arg. at 2:27–37.

In the face of such overwhelming intrinsic evidence supporting the district court's securing yarns construction, Barrday directs this court to a specification excerpt and certain dependent claims of the '379 patent as the intrinsic support for its proposed construction. *See* Oral Arg. at 8:20–58. Neither undermines the district court's construction. The specification excerpt on which Barrday relies states:

> In some embodiments, one or more of the warp yarns **12**, **15** and/or weft yarns **14**, **17** could be used *in addition to, or in place of*, one or more securing yarns **22** for holding the two or more layers together. For example, one or more the [sic] of the warp yarns **12**, **15** and/or weft yarns **14**, **17** could be interwoven along a path similar to the path of the securing yarn **22** as shown in FIG. **2** to secure the first layer **11** to the second layer **13**.

'261 patent col. 3 ll. 35–42 (emphasis added); *see* Appellants' Br. 26–27, 38. Barrday contends that this excerpt "spells out exactly how the warp and weft yarn may be used

as a securing yarn." Appellants' Br. 26. However, as the district court correctly explained, "the relevant question is one of definition, not function." *Claim Construction Order* at \*10. Although this excerpt suggests that warp and weft yarns of the upper and lower layers can be *substituted for* and *serve as the functional equivalent of* securing yarns, it does not indicate that the latter *refers to* the former.

Although Barrday argues that the district court's construction "exclude[s] the embodiment" disclosed in this excerpt where the yarns of the upper and lower layers are substituted for the securing yarns, *see* Appellants' Br. 38, "[o]ur precedent is replete with examples of subject matter that is included in the specification, but is not claimed." *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1373 (Fed. Cir. 2008) (citations omitted) (refusing "to construe the claim term to encompass the alternative embodiment" because such a construction "would contradict the language of the claims" and "the [other] intrinsic evidence"); *see also Kyocera*, 22 F.4th at 1382–83 (similar). "[T]he mere fact that there is an alternative embodiment disclosed [here] that is not encompassed by [the] district court's claim construction does not outweigh the language of the claim, especially when the court's construction is supported by the intrinsic evidence." *TIP*, 529 F.3d at 1373. Additionally, on the other hand, Barrday contends that the district court's construction erroneously reads *in* a limitation from the specification—namely, "other than yarns from the upper and lower woven layers." Appellants' Br. 32; *see also id.* at 33–35. We disagree. "[R]ather than improperly reading a limitation . . . into the claims, the district court's construction, with which we agree, properly reads the claim term in the context of the entire patent." *Wis. Alumni*, 905 F.3d at 1352.

Aside from the specification excerpt on which Barrday relies, Barrday points to the independent-dependent claim structure of the '379 patent as alleged support for its proposed construction. *See* Appellants' Br. 32; *see also id.* at

14                    BARRDAY, INC. v. LINCOLN FABRICS INC.

27–31, 39–42. Dependent claims 10 through 14 of the '379 patent, each of which relies on independent claim 1, recite that "the securing yarns include" various combinations of upper warp yarns, upper weft yarns, lower warp yarns, and lower weft yarns. *See* '379 patent col. 10 ll. 52–67. Barrday argues that the securing yarns term recited in the independent claim must therefore include the upper warp yarns, upper weft yarns, lower warp yarns, and lower weft yarns terms recited in the dependent claims. *See* Appellants' Br. 24–25, 27–29. Barrday also contends that the district court's construction violates this court's precedent discouraging constructions that render dependent claims "meaningless" because the district court's construction renders dependent claims 10 through 14 of the '379 patent meaningless. *See id.* at 27–29 (first citing *Littelfuse, Inc. v. Mersen USA EP Corp.*, 29 F.4th 1376, 1380 (Fed. Cir. 2022); then citing *Baxalta Inc. v. Genentech, Inc.*, 972 F.3d 1341, 1346 (Fed. Cir. 2020); then citing *Intell. Ventures I LLC v. T-Mobile USA, Inc.*, 902 F.3d 1372, 1378 (Fed. Cir. 2018); then citing *Ortho-McNeil Pharm., Inc. v. Mylan Labys., Inc.*, 520 F.3d 1358, 1362 (Fed. Cir. 2008); and then citing *Wright Med. Tech. Inc. v. Osteonics Corp.*, 122 F.3d 1440, 1445 (Fed. Cir. 1997)).

We do not find Barrday's argument persuasive. "While it is true that dependent claims can aid in interpreting the scope of claims from which they depend, they are only an aid to interpretation and are not conclusive." *Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.*, 831 F.3d 1350, 1360 (Fed. Cir. 2016) (citations omitted). "[C]laim differentiation is a rebuttable presumption that may be overcome by a contrary construction dictated by the written description or prosecution history." *Howmedica*, 822 F.3d at 1323 (citation omitted). This court has adopted a construction rendering dependent claims meaningless when that construction was supported by either the specification or the prosecution history. *See Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1358–59 (Fed.

Cir. 2012) (en banc) (construction supported by specification); *Regents of Univ. of Cal. v. Dakocytomation Cal., Inc.*, 517 F.3d 1364, 1371–76 (Fed. Cir. 2008) (construction supported by prosecution history); *Enzo Biochem Inc. v. Applera Corp.*, 780 F.3d 1149, 1154–57 (Fed. Cir. 2015) (construction supported by specification); *Multilayer Stretch*, 831 F.3d at 1358–62 (construction supported by specification).[3] Similarly, we do so here where the claim language, specification, and figures all support a securing yarns construction that excludes yarns from the upper and lower layers.[4]

The lack of weight afforded to the dependent claims is particularly appropriate here because such claims were added after the filing of the original patent application and

---

[3]   Contrary to the dissent's contention, independent claim 1 of the Asserted Patents *is* "clear on its face." Dissent at 7 (quoting *Multilayer*, 831 F.3d at 1360). Independent claim 1 of the Asserted Patents refers to the upper yarns, lower yarns, and securing yarns as separate structural limitations "interwoven with" one another. '261 patent col. 10 ll. 15–18; '379 patent col. 10 ll. 14–17.

[4]   Even the one specification excerpt on which Barrday affirmatively relies that we addressed above does not support Barrday's proposed construction, which Barrday argues is supported by these dependent claims. The excerpt suggests that warp and weft yarns of the upper and lower layers can only serve as *the functional equivalent of* securing yarns, not that securing yarns can *be* warp and weft yarns of the upper and lower layers as recited in the dependent claims. *Compare* '261 patent col. 3 ll. 35–42 *with* '379 patent col. 10 ll. 52–67. Counsel for Barrday did not have an explanation for this linguistic difference at oral argument, stating "I don't have an answer for that" when asked why the excerpt fails to employ the same language as the dependent claims. *See* Oral Arg. at 4:12–23.

because the motive for adding such claims appears to be litigation-driven. *See ICU*, 558 F.3d at 1376 (affirming summary judgment of noninfringement based on a construction rendering a dependent claim superfluous because, in part, the claim was only added "after the filing date of the original patents" and after "the introduction of the allegedly infringing [competitor] products"); *Cave Consulting Grp., LLC v. Optum Insight, Inc.*, 725 F. App'x 988, 995 (Fed. Cir. 2018) (adopting a construction rendering dependent claims meaningless because it was "significant" that the claims "were added after the filing of the original application"), *cert denied*, 139 S. Ct. 825 (2019); *Barkan Wireless Access Techs., L.P. v. Cellco P'ship*, 748 F. App'x 987, 992 (Fed. Cir. 2018) (same). Dependent claims 10 through 14 were not only added after the filing of the underlying litigation, but also *mere weeks* after Barrday received a letter from Lincoln explaining that there was no reasonable basis for suit as to the '261 patent because the accused Lincoln fabrics interweave the upper and lower layers without using securing yarns. *See* J.A. 559–60 (Lincoln's March 10, 2015 letter); J.A. 564, 567, 572, 574 (Barrday's April 2, 2015 prosecution amendment adding claims that issued as claims 10 through 14 of the '379 patent). On these facts, "[t]he dependent claim tail cannot wag the independent claim dog." *Multilayer*, 831 F.3d at 1360 (citations omitted).[5]

---

[5] The dissent argues that "broadening claims during prosecution to capture a competitor's product is not improper." Dissent at 13 (quoting *Synthes USA, LLC v. Spinal Kinetics, Inc.*, 734 F.3d 1332, 1341 (Fed. Cir. 2013) and citing *Texas Instruments Inc. v. U.S. Intern. Trade Comm'n*, 871 F.2d 1054, 1065 (Fed. Cir. 1989)). However, in *Synthes* and *Texas Instruments*, this court explained that such broadening was permissible when the specification already disclosed the embodiments covered by the

The cases on which Barrday relies, where this court rejected a construction that rendered dependent claims meaningless, are inapposite. In those cases, the specification did not support such a construction, unlike the specification here. *See Littelfuse*, 29 F.4th at 1379–81; *Baxalta*, 972 F.3d at 1347–48; *Intell. Ventures*, 902 F.3d at 1377–78; *Ortho-McNeil*, 520 F.3d at 1362; *Wright*, 122 F.3d at 1444–45. And in none of those cases did the motive for adding the dependent claims at issue appear to be litigation-driven, as is the case here.

In sum, based on the intrinsic evidence,[6] we conclude that the district court correctly construed securing yarns in the Asserted Patents as "yarns, other than yarns from the upper and lower woven layers, that secure the upper and lower woven layers together." *Claim Construction Order*

---

broadened claims. *See Synthes*, 734 F.3d at 1341; *Texas Instruments*, 871 F.2d at 1065. As discussed in the previous footnote, the single specification excerpt on which both Barrday and the dissent relies for support for their proposed construction does not actually disclose the embodiments covered by the dependent claims. *See supra* note 4 (explaining the linguistic differences between column 3 lines 35 through 42 of the '261 patent and dependent claims 10 through 14 of the '379 patent).

[6] Although Lincoln points to extrinsic evidence in the form of a related foreign application as alleged claim construction support, *see* Appellee's Br. 30–32, we—like the district court—decline to consider this extrinsic evidence. *See* J.A. 272, 289–91 (Lincoln raising arguments on related foreign application); *Claim Construction Order* at *5–14 (district court not addressing such extrinsic evidence). Because the intrinsic evidence "resolves any ambiguity" as to the meaning of securing yarns, "it is improper to rely on extrinsic evidence to contradict the meaning so ascertained." *Helmsderfer*, 527 F.3d at 1382 (citation omitted).

18                    BARRDAY, INC. v. LINCOLN FABRICS INC.

at *13–14.  Because the parties stipulated to noninfringement of the asserted claims of the Asserted Patents based on the district court's construction of securing yarns, *see* J.A. 1–4, we affirm the district court's judgment of noninfringement.  *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1323 (Fed. Cir. 2011); *Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 681 (Fed. Cir. 2015).

## III. CONCLUSION

We have considered Barrday's remaining arguments, and we find them unpersuasive.  For the above reasons, we *affirm* the district court's judgment of noninfringement of the asserted claims of the Asserted Patents.

**AFFIRMED**

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BARRDAY, INC., BARRDAY CORP.,**
*Plaintiffs-Appellants*

**v.**

**LINCOLN FABRICS INC.,**
*Defendant-Appellee*

---

2022-1903

---

Appeal from the United States District Court for the Western District of New York in No. 1:15-cv-00165-LJV-MJR, Judge Lawrence J. Vilardo.

---

STARK, *Circuit Judge*, dissenting.

As is often the case, the claim construction dispute before us today presents a close call.  Determining what a person of ordinary skill in the art, reading the claims in the context of the patent, would understand to be the scope of the claims is frequently entirely contestable, with reasonable (even strong) arguments on both sides.  That is certainly the situation we confront here.  For the reasons I explain below, I think the patentee, who proposes a broader construction than was adopted by the district court, has the more persuasive position.  Therefore, I respectfully dissent.

I

2                                    BARRDAY, INC. v. LINCOLN FABRICS INC.

The disputed claim term is "securing yarns," which appears in all of the claims at issue in this appeal. Independent claim 1 of the '379 patent is representative and recites:

1. A multi-layer ballistic woven fabric, comprising:

a. an upper woven layer having upper warp yarns and upper weft yarns that are interwoven together;

b. a lower woven layer having lower warp yarns and lower weft yarns that are interwoven together;

c. a plurality of *securing yarns*, each *securing yarn* interwoven with at least some of the upper yarns and some of the lower yarns so as to secure the upper and lower woven layers together;

d. wherein the multi-layer ballistic woven fabric is formed by interweaving the *securing yarns* with the warp yarns and weft yarns as the upper woven layer and lower woven layer are made; and further wherein at least some of the upper and lower yarns are offset from each other so as to overlap by more than 10%.

'379 patent col. 10 ll. 9-23 (emphasis added).[1]

---

[1]    Claim 1 of the '261 patent contains the identical "securing yarns" limitations (i.e., limitations c and d) and only differs from claim 1 of the '379 patent by reciting the "offset" limitation (i.e., the second half of limitation d of claim 1 of the '379 patent) as a separate limitation (e), with a different range: "wherein at least some of the upper yarns and lower yarns are offset from each other so as to overlap

The patentee, Barrday, proposed that "securing yarns" be construed as "yarns for securing or holding upper and lower woven layers together."[2]  By contrast, the accused infringer, Lincoln, argued that "securing yarns" should be more narrowly construed as "[y]arns, *other than yarns from the upper and lower woven layers*, that tie the upper and lower woven layers together."  J.A. 283 (emphasis added).  The difference between the proposals, and the only issue before us on appeal, is whether the construction should, as Lincoln proposed, exclude embodiments in which an upper or lower layer warp or weft yarn may also be a securing yarn.  The district court included Lincoln's narrowing limitation in the construction it adopted: "yarns, *other than yarns from the upper and lower woven layers*, that secure the upper and lower woven layers together." *Barrday, Inc. v. Lincoln Fabrics Inc.*, No. 15-CV-165-LJV-JWF, 2021 WL 3076869, at *14 (W.D.N.Y. July 21, 2021) ("*Claim Construction Order*") (emphasis added).

The Majority affirms the district court's construction. Reviewing the issue de novo, *see Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1135-36 (Fed. Cir. 2016), I would, instead, side with Barrday.  I believe that a skilled artisan considering the claims in the context of the intrinsic and

---

by between 10% and 95%." '261 patent col. 10 ll. 10-25. These differences are not relevant to this appeal.

[2]    I agree with my colleagues that the district court properly rejected Barrday's alternative position that "securing yarns" requires no construction.  Where, as here, the parties present "a fundamental dispute regarding the scope of a claim" – such as whether the securing yarns must be separate from the yarns of the upper and lower layers – "it is the court's duty to resolve it." *O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

4                    BARRDAY, INC. v. LINCOLN FABRICS INC.

extrinsic evidence would conclude that an upper or lower layer warp or weft yarn may serve as a securing yarn.

## II

The claim language, specification, prosecution history, and extrinsic evidence all favor Barrday's proposed broader construction rather than the narrower construction preferred by Lincoln and adopted by the district court.

## A

The claims do not expressly indicate whether upper and lower layer warp and weft yarns may also be securing yarns. Importantly, the claim language is broad and non-limiting. The claims, including representative claim 1 of the '379 patent (reproduced above), contain no language that excludes embodiments in which the same yarn serves as both a warp or weft yarn and also, at the same time, as a securing yarn. Given that "[t]here are no words of manifest exclusion," *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1378 (Fed. Cir. 2014), a person of ordinary skill would likely understand that the patentee intended to claim the full scope of what is captured by the plain meaning of "securing yarns," which includes when upper and lower layer yarns serve the function of holding two or more layers together. *See also Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012) ("The patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope.").

Because the claims identify, on the one hand, upper and lower layer yarns and, on the other hand, securing yarns, it is presumed that these separately described yarns are different structures. *See Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369, 1382 (Fed. Cir. 2022); *see also* Maj. Op. at 8. This presumption, however, may be rebutted. A patentee is free to claim embodiments

in which a single structure performs the functions of multiple, separately recited claim limitations. *See, e.g., Powell v. Home Depot USA, Inc.*, 663 F.3d 1221, 1231-32 (Fed. Cir. 2011) ("[T]he specification teaches that the cutting box *may also function* as a 'dust collection structure.'") (emphasis added); *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1303 (Fed. Cir. 2011) ("The claims and the specifications indicate that the 'needle holder' and 'retainer member' need not be separately molded pieces."). That is just what a person of skill in the art would understand to be the case here, since the presumption of separate structures is rebutted by the claims (and by the specification, as I describe below in Part II.B).

In my view, the presumption that securing yarns must be a separate structure from the warp and weft yarns is persuasively rebutted by the existence of claims that unambiguously claim embodiments in which warp or weft yarns are performing the agreed-upon function of securing yarns. I am referring here to dependent claims 10-14 of the '379 patent, which expressly claim embodiments wherein, for example, "*the securing yarns include one or more of the upper warp yarns, the lower warp yarns, the upper weft yarns and the lower weft yarns.*" '379 patent col. 10 ll. 52-54 (emphasis added); *see also* Maj. Op. at 4-5 (reproducing all pertinent dependent claims). No one – not Lincoln, not the district court, and not the Majority – disputes that these dependent claims read on embodiments in which an upper or lower layer warp or weft yarn is holding two layers together and there is no separate securing yarn.

Nonetheless, the district court's construction requires that the securing yarns be "yarns, other than yarns from the upper and lower woven layers," and thereby reads the undisputed embodiments of claims 10-14 out of independent claim 1, from which they depend. This results in the scope of dependent claims 10-14 being broader than the scope of independent claim 1, an outcome not permitted by the law – making the district court's construction a

strongly disfavored one. *See Alcon Research, Ltd. v. Apotex Inc.*, 687 F.3d 1362, 1367 (Fed. Cir. 2012) ("It is axiomatic that a dependent claim cannot be broader than the claim from which it depends."); *see also* 35 U.S.C. § 112 ¶ 4 ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers."). The district court's construction is problematic for the additional reason that it renders dependent claims 10-14 unintelligible, as it means these claims simultaneously allow and prohibit warp and weft yarns serving as securing yarns. We have directed courts to "strive[] to reach a claim construction that does not render claim language in dependent claims meaningless," *Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1362 (Fed. Cir. 2008), and also to apply a "strong presumption against a claim construction that excludes a disclosed embodiment," *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1324 (Fed. Cir. 2011). The construction affirmed by the Majority is inconsistent with these instructions.

I recognize that "[c]anons of claim construction, such as the doctrine of claim differentiation and the canon of interpreting claims to preserve their validity, are not absolute." *Cave Consulting Grp., LLC v. Optum Insight, Inc.*, 725 F. App'x 988, 995 (Fed. Cir. 2018); *see also ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1376 (explaining claim differentiation "is not a rigid rule but rather is one of several claim construction tools"). While not dispositive, neither are these canons irrelevant, and both of them here support Barrday's construction, which complies with the presumption that dependent claims should be "of narrower scope than the independent claims from which they depend," *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1242 (Fed. Cir. 2003), and which may preserve the validity of the claims, *see generally Ruckus Wireless, Inc. v. Innovative Wireless Solutions, LLC*, 824 F.3d 999, 1004 (Fed. Cir. 2016) ("If, after applying all other available tools of claim

construction, a claim is ambiguous, it should be construed to preserve its validity.").

The Majority rightly notes that the "dependent claim tail" cannot be permitted to wag the "independent claim dog," echoing our warning in *Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.*, 831 F.3d 1350, 1360 (Fed. Cir. 2016). *See* Maj. Op. at 16. I do not find Barrday's construction to run afoul of this guidance. Our point in *Multilayer* was that "the language of a dependent claim cannot *change* the meaning of an independent claim *whose meaning is clear on its face.*" *Multilayer*, 831 F.3d at 1360 (emphasis added). Here, it is far from "clear on its face" that independent claims 1 of the '261 and '379 patents do not include embodiments lacking separate securing yarns.

The other cases the Majority relies on, *see* Maj. Op. at 14-15, provide little support for its conclusion that dependent claims 10-14 should not factor heavily in the claim construction analysis. In *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1358-59 (Fed. Cir. 2012), we adopted a construction that rendered dependent claims meaningless because any other construction would have resulted in the scope of these claims contradicting limiting statements we read as referring to all embodiments "of the invention." *See also id.* at 1359 (analogizing to cases involving patents with specifications referring to "the present invention."). Barrday's specifications do not similarly use the term "of the invention" (or the like) to limit claim scope.[3] In *Regents of Univ. of Cal. v. Dakocytomation Cal, Inc.*, 517 F.3d 1364, 1371-76 (Fed. Cir. 2008), we noted that

---

[3]    To the contrary, Barrday's specification expressly states that "[t]he drawings included herewith are for illustrating various examples . . . and are not intended to limit the scope of what is taught in any way." '261 patent col. 1 ll. 51-54.

8                          BARRDAY, INC. v. LINCOLN FABRICS INC.

the presumption of claim differentiation can be rebutted by prosecution history.  Here, nothing in the prosecution history does so.  *See infra* Part II.C.  And in *Enzo Biochem Inc. v. Applera Corp.*, 780 F.3d 1149, 1154-57 (Fed. Cir. 2015), we held that "dependent claims cannot broaden an independent claim from which they depend," but there is nothing in Barrday's proposed construction that results in the independent claims being any broader than a person of ordinary skill in the art would find them to be, even without the dependent claims.  *See generally Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1381 (Fed. Cir. 2006) ("[C]laim differentiation can not broaden claims *beyond their correct scope*.") (emphasis added; internal quotation marks omitted).

Thus, I conclude that the claim language, and particularly that of dependent claims 10-14 of the '379 patent, favors a construction which allows the warp and weft yarns of the upper and lower layers to be securing yarns.

B

That securing yarns do not have to be separate structures from the upper and lower layer warp and weft yarns is further confirmed by the specification, which explicitly contemplates embodiments in which a warp or weft yarn is also a securing yarn.  Although the specification generally distinguishes between securing yarns and the yarns in the upper and lower woven layers, and teaches that embodiments using a separate securing yarn are preferred, the specification also states:

> [i]n some embodiments, one or more of the warp yarns and/or weft yarns could be used *in addition to, or in place of, one or more securing yarns* for holding the two or more layers together.

'261 patent col. 3 ll. 35-38 (emphasis added; internal citations to numbered elements omitted).  The specification even describes one way such an embodiment could be

BARRDAY, INC. v. LINCOLN FABRICS INC.                    9

structured: "one or more of the warp yarns and/or weft yarns could be interwoven along a path similar to the path of the securing yarn . . . to secure the first layer to the second layer." '261 patent col. 3 ll. 38-42 (internal citations to numbered elements omitted); *see also* Appellant Br. at 26-27 ("For example, every fifth lengthwise yarn could be a 'securing yarn' holding the layers together, while the first to fourth lengthwise yarns in this example would be warp yarns."); Reply Br. at 3 ("If, for example, every fifth lengthwise (warp) yarn in the upper layer of the claimed multilayer fabric is interwoven with 'at least some' of the upper yarns and some of the lower yarns, so as to secure the upper layer to the lower layer, that fifth lengthwise yarn would constitute a 'securing yarn' performing the function of holding the layers together *and* that fifth lengthwise yarn would be structurally distinct from the other four lengthwise yarns in the pattern.").[4] The Majority is incorrect, then, when it asserts that "[t]he specification *exclusively* refers to securing yarns as structures that are separate and distinct from warp and weft yarns of the upper and lower layers." Maj. Op. at 9 (emphasis added).

Since the specification calls out that "in some embodiments" the warp and weft yarns may be used "in place of" securing yarns, a claim construction that mandates separate securing yarns – and thereby excludes disclosed embodiments – is most likely incorrect. *See, e.g.*, *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276 (Fed. Cir. 2008) ("We

---

[4]   I see nothing in the record to support a conclusion that these embodiments would be a "physical impossibility," *Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249, 1254-55 (Fed. Cir. 2010) (holding "hinged arm" could not be connected to itself), or otherwise "nonsensical," Maj. Op. at 9. After all, Lincoln contends that its accused products are precisely such embodiments. *See, e.g.*, J.A. 560.

normally do not interpret claim terms in a way that excludes embodiments disclosed in the specification."). This is yet another mark against the district court's construction.

In discussing this portion of the specification, the Majority says: "The excerpt suggests that warp and weft yarns of the upper and lower layers can only serve as the *functional equivalent of* securing yarns, not that securing yarns can *be* warp and weft yarns of the upper and lower layers as recited in the dependent claims." Maj. Op. at 15 n.4; *see also id.* at 13 (explaining concern is with "definition, not function"). I do not understand how this distinction leads to a decision to affirm the district court, especially because the definition of securing yarns is all about their function, i.e., to hold two layers together. Elsewhere, the Majority recognizes that "[t]he crux of the parties' dispute is whether the securing yarns claim term can include yarns from the upper and lower woven layers *when such yarns are serving the securing function.*" Maj. Op. at 7 (emphasis added). The district court likewise framed the dispute as one about function, writing:

> As a general matter, the parties agree that, for purposes of the '261 and '379 patents, "securing yarns" are yarns that serve the *function* of holding the upper and lower woven layers together. What they dispute is whether the term applies to a warp or weft yarn from the upper or lower layer when such yarn is *serving that function.*

*Claim Construction Order* at *6 (emphasis added). To me, then, this appeal is about whether warp and weft yarns can function as securing yarns, and the specification (like the claims) makes clear that they can.

I recognize that all of the figures in the specification only depict embodiments in which the securing yarns are separate from the warp and weft yarns. The specification, however, "did not need to include a drawing of [an

embodiment] to cover that particular embodiment." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1367 (Fed. Cir. 2002).    I further recognize that the specification teaches that the preferred embodiments of the invention employ separate securing yarns and criticizes embodiments lacking them.  But "statements about the difficulties and failures in the prior art, without more, do not act to disclaim claim scope."  *Retractable Techs.*, 653 F.3d at 1306; *see also Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1335 (Fed. Cir. 2009) ("[D]iscussion of the shortcomings of certain techniques is not a disavowal of the use of those techniques in a manner consistent with the claimed invention.").  Moreover, claims are not limited to their preferred embodiments, even when the specification discloses only a single embodiment.  *See Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 967 (Fed. Cir. 2022) ("Embodiments in the specification – even if there is only one embodiment – cannot limit the scope of the claims absent the patentee's words or expressions of manifest exclusion or restriction.") (internal quotation marks omitted).[5]

---

[5]    Lincoln suggests that various passages in the specification do contain words of exclusion, but all of the statements on which Lincoln relies are discussing exemplary embodiments, not the full scope of the claims.  *See* '261 patent col. 2 l. 65 – col. 3 l. 9 ("As shown, *in some embodiments* the securing yarns may be aligned with the warp or weft yarns.") (emphasis added; (internal citations to numbered elements omitted); *id.* at col. 3 ll. 10-25 (describing specific embodiment illustrated in Figure 2); *id.* at col. 3 ll. 58-67 ("The ratio between securing yarns and ballistic yarns . . . *tends to depend* on the desired inter-layer stability.") (emphasis added); *id.* at col. 4 ll. 23-26 ("*In some embodiments*, the securing yarns are generally of significantly smaller denier than the warp yarns.") (emphasis added; internal

12                                    BARRDAY, INC. v. LINCOLN FABRICS INC.

Barrday's specification, when describing the advantages of embodiments with separate securing yarns, reiterates that embodiments lacking these advantages are also contemplated, stating:

> *Generally* the yarns of one layer are not interwoven with the yarns of another layer because such interweaving tends to increase the degree of crimp for the yarn in relation to [the] rest of the yarns in the fabric, which can create ballistic weak points.

'261 patent col. 2 ll. 36-39 (emphasis added).   The patentee's statement that the claims "generally" have separate securing yarns tells a person of ordinary skill in the art that the claims also extend to specific embodiments – which are expressly called out in column 3, lines 35-42 of the '261 patent – that do not have separate securing yarns.

In sum, then, the specification, like the claim language, would most likely be understood by a person having ordinary skill in the art as supporting the conclusion that "securing yarns" include upper and lower layer warp and weft yarns when those yarns hold the upper and lower layers together.

C

"[T]he prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005).   For purposes of the claim construction dispute we resolve today, the most significant event in the prosecution of Barrday's patents was the addition, by amendment, of

---

citations to numbered elements omitted); *id.* at col. 4 ll. 42-50 ("*In some embodiments*, the securing yarns may be generally of a much smaller size than the warp yarns and weft yarns.") (emphasis added; internal citations to numbered elements omitted).

dependent claims 10-14 of the '379 patent.  These are the claims which expressly claim embodiments in which the upper and lower layer warp and weft yarns function as securing yarns.  The record shows that Barrday applied for dependent claims 10-14, in its then-pending application for the '379 patent, only after learning that Lincoln's accused products directly interweave upper and lower layers without separate securing yarns.  *See* J.A. 559-60.  The district court placed little weight on these dependent claims because of concerns about the timing and motivation by which Barrday obtained them.  *See Claim Construction Order* at \*11 ("[T]he probative value of a dependent claim in defining the scope of an independent claim is vitiated where the motive for creating the dependent claim appears to be litigation-driven.") (internal quotation marks omitted).

In my view, these facts are not relevant to the claim construction analysis.  All patent claims – even those added by amendment, during litigation, and with the specific intent to aid an infringement case – are presumed valid.  *See* 35 U.S.C. § 282.  Neither the statute nor our cases makes any distinction in the strength of this presumption on the basis of the timing or motivation underlying acquisition of a claim.  To the contrary, we have said "[i]t is not improper to amend or insert claims intended to cover a competitor's product the applicant's attorney has learned about during the prosecution of a patent application." *Texas Instruments Inc. v. U.S. Intern. Trade Com'n*, 871 F.2d 1054, 1065 (Fed. Cir. 1989) (internal quotation marks omitted); *see also Synthes USA, LLC v. Spinal Kinetics, Inc.*, 734 F.3d 1332, 1341 (Fed. Cir. 2013) ("[B]roadening claims during prosecution to capture a competitor's product is not improper.").[6]

---

[6]    My colleagues distinguish *Texas Instruments* and *Synthes* as cases in which "the specification already

14                    BARRDAY, INC. v. LINCOLN FABRICS INC.

My colleagues state that "[t]he lack of weight afforded to the dependent claims is particularly appropriate here because such claims were added after the filing of the original patent application and because the motive for adding such claims appears to be litigation-driven." Maj. Op. at 15-16. The Majority's conclusion is not well-supported in the cases on which it relies. In *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1376 (Fed. Cir. 2009), we repeated the district court's observation that a dependent claim "was only added . . . years after the filing date of the original patents . . . and the introduction of the allegedly infringing . . . products." We did not, however, accord any importance to this fact; for instance, we did not use it to devalue the weight of the dependent claims or to question their validity. In *Cave Consulting*, 725 F. App'x at 995, a nonprecedential opinion, we allowed that application of the doctrine of claim differentiation could be affected by the fact that dependent claims were added after the filing of an original application, finding this to be a "significant" but "not dispositive" factor. But we also stressed that "had the originally filed application . . . in *any* way indicated that its invention included direct standardization, the later-added dependent claims" – which indisputably claimed direct standardization – "could have lent support to [the patent owner's] contention that the independent claims cover direct standardization." *Id.* Here there is just such an "indication," as Barrday's original specification always and expressly disclosed embodiments with no separate securing yarns. *See* '261 patent col. 3 ll. 35-42. This would lead a skilled artisan to conclude that the dependent claims

---

disclosed the embodiments" covered by the added claims. Maj. Op. at 16 n.5. As explained above (*see supra* Part II.B), I read Barrday's specification as disclosing embodiments that use the warp/weft yarn "in place of" securing yarns – that is, the embodiments that are also the subject of the dependent claims.

were added for clarification and not as an (improper) expansion of claim scope. In *Barkan Wireless Access Techs., L.P. v. Cellco P'ship*, 748 F. App'x 987, 992 (Fed. Cir. 2018), another nonbinding opinion, we found that dependent claims identified by the patentee did "not compel a construction of [a disputed claim term that is] inconsistent with the specification, particularly where these claims were added after the patent application filing date." Here, by contrast, Barrday is not relying on dependent claims to compel a construction that is inconsistent with the specification.

From all this, I believe a person of ordinary skill in the art would find the prosecution history to be supportive of Barrday's proposed construction. Certainly, there is nothing in the prosecution history that detracts from the conclusion the skilled artisan would derive from the claims and the specification. At worst, from Barrday's perspective, the prosecution history is neutral.

In reaching these conclusions, I do not mean to suggest that one or more of Barrday's claims cannot be found invalid or unenforceable. It may be that the breadth of the construction preferred by Barrday makes its claims more vulnerable to an obviousness or anticipation defense. *See generally 01 Communique Lab., Inc. v. Citrix Sys., Inc.*, 889 F.3d 735, 742 (Fed. Cir. 2018) ("[I]f a claim term must be broadly interpreted to read on an accused device, then this same broad construction will read on the prior art."). It may also be that some or all of the claims would capture embodiments that are unsupported by the specification's written description or are not adequately enabled. *See, e.g., Idenix Pharm. LLC v. Gilead Sci. Inc.*, 941 F.3d 1149, 1155-59 (Fed. Cir. 2019) (applying patentee's preferred construction and invalidating claims for lack of adequate written description and enablement); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1380 (Fed. Cir. 2007) ("The irony of this situation is that [patent owner] successfully pressed to have its claims include a jacketless system, but,

16                    BARRDAY, INC. v. LINCOLN FABRICS INC.

having won that battle, it then had to show that such a claim was fully enabled, a challenge it could not meet."). Because this case ended at the claim construction stage, the district court did not reach issues of validity or enforceability.[7]  I would remand to allow the parties to resume their litigation based on application of the correct claim construction.

D

The district court did not consider any extrinsic evidence.  I agree it is unnecessary to do so.  *See Seabed Geosolutions (U.S.) Inc. v. Magseis FF LLC*, 8 F.4th 1285, 1287 (Fed. Cir. 2021) ("If the meaning of a claim term is clear from the intrinsic evidence, there is no reason to resort to extrinsic evidence.").  However, the parties have presented extrinsic evidence and have briefed their arguments regarding it.  Therefore, I will briefly address it.

Like the intrinsic evidence, the extrinsic evidence here supports Barrday's proposed construction.  The extrinsic evidence is the prosecution history of Barrday's application for a European patent related to its '261 and '379 patents. *See* J.A. 289-91, 420-23, 548-49; *see also Starhome GmbH v. AT&T Mobility LLC*, 743 F.3d 849, 858 (Fed. Cir. 2014) ("[S]tatements made before foreign patent offices are sometimes relevant to interpreting the claims.").  As part of the European  prosecution,  in  responding  to  an  examiner

---

[7]    Barrday filed a motion seeking clarification as to whether the district court's construction rendered dependent claims 10-14 invalid or unenforceable.  It was denied without prejudice because the magistrate judge who handled the motion had only been referred the matter of claim construction.  *See Barrday, Inc. v. Lincoln Fabrics Inc.*, No. 15-CV-165-LJV-JWF, 2021 WL 8263498 (W.D.N.Y. Oct. 28, 2021).

objection, Barrday stated that the specification paragraph I highlighted above – including the statement that "one or more of the warp yarns . . . and/or weft yarns . . . could be used in addition to, or in place of, one or more securing yarns" – described features that "are not illustrated in a drawing or *claimed*, [although] these features [nevertheless] form part of an embodiment of the invention." J.A. 349 (emphasis added). Barrday eventually amended the European specification to strike reference to embodiments in which warp or weft yarns are used "in place of" separate securing yarns; thereafter, the European claims were allowed. *See* J.A. 355, 361.

This history – which relates to a different patent with different claim scope, examined and granted under a different set of patent laws – does not support a conclusion that the U.S. patents at issue in this appeal likewise fail to claim embodiments lacking separate securing yarns. To the contrary, because the "in place of" language remains in the specifications of the '261 and '379 patents, a person of ordinary skill in the art would understand the European application to have been prosecuted with a different claim scope in mind.

Additionally, the European claims require securing yarns having different characteristics – such as tenacity, tensile moduli, and denier (i.e., are finer) – than the warp and weft yarns. *See* J.A. 440. The claims of the patents we are considering, by contrast, contain no requirement that the securing yarns and warp/weft yarns differ in any of these characteristics (and Lincoln does not contend otherwise).

From all this, a person of ordinary skill in the art would conclude, once again, that embodiments without separate securing yarns are within the scope of the claims of the U.S. patents that are the subject of this appeal. The extrinsic evidence, then, confirms what such an artisan would already have concluded based on the intrinsic evidence.

18                    BARRDAY, INC. v. LINCOLN FABRICS INC.

### III

For all of these reasons, I would vacate the district court's judgment of non-infringement and remand with instructions to conduct further proceedings based on a construction of "securing yarns" as "yarns for securing or holding upper and lower woven layers together." Accordingly, I respectfully dissent.